John F. BEST, Jr., Debtor.

John F. Best, Jr., Plaintiff–Appellant,

v.

Nationstar Mortgage LLC,
Defendant–Appellee.

BAP NO. NH 15–019
Bankruptcy Case No. 12–13572–JMD
Adversary Proceeding No.
14–01083–JMD

United States Bankruptcy Appellate Panel
of the First Circuit.

October 30, 2015

John F. Best, Jr., Pro Se, on brief for Appellant.

Paula–Lee Chambers, Esq., on brief for Appellee.

Before Tester, Bailey, and Finkle, United States Bankruptcy Appellate Panel Judges.

Per Curiam.

John F. Best, Jr. (the "Debtor") appeals pro se from the bankruptcy court's February 25, 2015 order granting the motion for judgment on the pleadings filed by Nationstar Mortgage LLC ("Nationstar") on the Debtor's complaint against Nationstar for alleged violations of the discharge injunction imposed by § 524(a).[1] For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

The Debtor filed a chapter 13 petition on November 27, 2012. During the course of the bankruptcy case, the Debtor filed two chapter 13 plans in which he identified Nationstar as a mortgagee but claimed that "no assignment of mortgage exists transferring note from GMAC to Nationstar so no debt exists." Nationstar object-

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rules" are to the Federal Rules of Civil Procedure.

ed to both plans, asserting that it was the holder of a note secured by a mortgage on the Debtor's property located at 113 Old Derry Road, Londonderry, New Hampshire, and the plan did not identify the pre-petition arrears owed to Nationstar or provide for the payment of pre-petition arrears. The bankruptcy court denied confirmation of both plans.

On February 6, 2013, the Debtor commenced an adversary proceeding against Nationstar contesting the validity of Nationstar's asserted mortgage. The bankruptcy court set discovery deadlines and scheduled a final pre-trial conference for May 20, 2014. The Debtor failed to appear at the final pre-trial conference on May 20, 2014, however, and the bankruptcy court dismissed the adversary proceeding for failure to prosecute.

In the interim, on April 8, 2013, Nationstar filed a proof of claim asserting a secured claim in the amount of $315,442.72. Nationstar attached to its proof of claim: (1) a promissory note dated November 9, 2006, in the amount of $228,750.00, executed by the Debtor in favor of 1–800–East–West Mortgage Company; (2) a mortgage dated November 9, 2006, executed by the Debtor in favor of Mortgage Electronic

Registration Systems, Inc., as nominee for 1–800–East–West Mortgage Company ("MERS"); (3) an allonge to the promissory note dated November 9, 2006, executed by 1–800–East–West Mortgage Company in favor of GMAC Bank; and (4) an assignment of mortgage dated December 7, 2012, executed by MERS in favor of Nationstar. The Debtor did not file an objection to Nationstar's proof of claim.

On January 31, 2014, the Debtor converted the case to chapter 7. On April 29, 2014, the bankruptcy court entered an order discharging the Debtor, and, thereafter, it closed the bankruptcy case.

On July 18, 2014, the Debtor filed a motion to reopen the case, which the bankruptcy court granted on July 24, 2014.

On September 17, 2014, the Debtor again commenced an adversary proceeding against Nationstar, this time seeking damages for alleged violations of the discharge injunction imposed by § 524(a). The Debtor alleged that, after the discharge, he received certified mail from Nationstar on June 27, 2014, June 28, 2014, and June 30, 2014 "demanding money for this discharged alleged debt that never existed...."[2] He also alleged that Nationstar

2. The Debtor did not attach copies of these communications to his complaint. In his motion to reopen, however, he identified these communications by attaching copies of the following:

> Correspondence received 6/27/14: Letter dated 6/20/14 informing the Debtor of the name and contact number for a "Dedicated Loan Specialist" to answer any questions regarding his loan status. It contained the following disclaimer: "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been dis-

charged, but is provided for informational purposes only."

Correspondence received 6/28/14: Letter dated 6/23/14 advising the Debtor of his default under the loan documents, the amount of past-due payments, the amount to be paid in order to cure the default, and that failure to cure the default could result in foreclosure. It contained the following disclaimer: "Federal law requires us to advise you that Nationstar Mortgage LLC ("Nationstar") is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your

contacted him by mail on July 26, 2014, July 28, 2014, and August 21, 2014,[3] for a total of six "contact violations." He asserted that "[t]he alleged debt has been discharged" and that "Nationstar can't now claim that they have a valid lien as a legitimate reason to start harassing and threating me...." In its answer to the complaint, Nationstar admitted it sent the post-discharge letters to the Debtor, but denied that its actions violated the discharge injunction.

3. The Debtor did not attach copies of these communications to his complaint. Nationstar, however, identified this correspondence in its amended motion for judgment on the pleadings as follows:

Correspondence received 7/26/14: Letter dated 7/11/14 informing the Debtor of a "Dedicated Loan Specialist" to answer any questions regarding his loan status. It contained the following disclaimer: "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only."

Correspondence received 6/30/14: Letter dated 6/24/14 informing the Debtor that it had placed certain "unapplied funds" into a "suspense account" because the funds were insufficient to be applied as a full payment. It also informed him of the total amount required to bring the account current. It contained the following disclaimer: "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." The next portion of the disclaimer is illegible on the copy contained in the appendix. It then says: "If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation."

On January 26, 2015, Nationstar filed an amended motion for judgment on the pleadings, asserting the post-discharge letters did not violate the discharge injunction because they included disclaimers indicating they were not attempting to collect a discharged debt from the Debtor, and because § 524(j) provides an exception for creditors holding a claim secured by the debtor's principal residence where the creditor's acts are in the ordinary course of business. The Debtor objected,

Correspondence received 7/28/14: Mortgage Loan Statement dated 7/18/14 containing account information such as the loan number, payment due date of 8/1/14, amount due of $140,957.96, and explanation of the amount due. It contained the following disclaimer: "This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised that this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation. If you do not wish to receive this monthly information Statement in the future ... please call...."

Correspondence received 8/21/14: Letter dated 8/14/14 informing the Debtor of a "Dedicated Loan Specialist" to answer any questions regarding his loan status. It contained the following disclaimer: "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in a bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only."

arguing that Nationstar did not have a valid lien due to its alleged failure to file a proof of claim or object to the chapter 13 plan, which listed Nationstar's mortgage as unsecured, and, therefore, the debt was discharged as an "unsecured debt."

The bankruptcy court held a hearing on February 24, 2015. At the hearing, the bankruptcy court considered the Debtor's arguments that Nationstar was not a secured creditor, but pointed out that, contrary to the Debtor's assertions, the bankruptcy discharge did not impact the presumed validity of Nationstar's lien. The bankruptcy court explained that the bankruptcy discharge relieved the Debtor from any personal liability on the promissory note and that he had no obligation to repay the note. The discharge did not, however, convert a secured debt into an unsecured debt, nor did it render Nationstar's mortgage invalid. The bankruptcy court also explained that neither Nationstar's failure to object to the plan nor its failure to file a proof of claim made the mortgage invalid.[4] The court stated: "Now, the fact that you said something in a [c]hapter 13 plan about their claim, and we'll assume they never objected to it, never did anything on it, ... unless the plan goes to completion it's not going to have any impact on their mortgage." The court pointed out: "[T]he bankruptcy doesn't have any impact on the validity of [Nationstar's] lien.... [T]he lien looks valid on its face so it's presumed to be valid."

The bankruptcy court also determined that Nationstar's actions fell within the exception to the discharge injunction set forth in § 524(j), stating:

But the one [section] that's important in this case is ... 524(j), which says, ... "This section does not operate as an injunction against an act by a creditor that is the holder of a secured claim." And I understand you say they don't have a secured claim, but if they have a mortgage that hasn't been declared void and appears to be properly executed and appears to be properly recorded, for this purpose it's a secured claim until some court says it isn't.

So the discharge does not act as an injunction against that person if they have a security interest in real property that is the principal residence of the debtor. Well, this was your home so ... that part is satisfied.

Number two, the act is in the ordinary course of business between the creditor and the debtor, so trying to collect money on the mortgage that they're owed is ordinary course of business. And it says, "Such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursing in rem relief," which is fancy legal language for foreclosure, "to enforce the lien." So that if they're getting in touch with you and saying, look, if you want to talk about payment, we can talk about payment, but if you don't we're going to have to foreclose our mortgage, Congress has said in the statute they can do that even after a discharge is entered.

The court went on to say:

[T]he statute says that they can contact you about payment as long as—and not foreclosing their lien as long as they don't pressure you or try to tell you, you have to pay them money. I've looked at

---

4. Throughout the proceedings, the Debtor repeatedly asserted that Nationstar failed to object to his plan or file a proof of claim. Both of these assertions were incorrect. Nationstar filed objections to both of the plans presented by the Debtor, and it filed a secured proof of claim with loan documents attached.

the letters that are in this record—there's like five or six of them—and when I look at them they all—I know you think the disclaimer is silly but the disclaimer says, "We're not trying to collect money. If you're in bankruptcy you don't have to pay. We're just trying to see if you want to pay" because if you wanted to pay them, they might accept that [in lieu of foreclosure]. . . .

But those letters post-discharge and even a letter since you reopened the case—it's all post-discharge—to the extent they look like that and have those caveats in them, I think come within the statutory exception to violating the discharge injunction. But for the statute it would be a violation, but the statute is there.

Based on the foregoing, the bankruptcy court granted Nationstar's motion for judgment on the pleadings.

This appeal followed.

## JURISDICTION

■■■■ The Panel has jurisdiction to hear appeals from a final judgment of the bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court's determination as to a violation of the discharge injunction is a final order. *See United States v. Monahan (In re Monahan)*, 497 B.R. 642, 646 (1st Cir. BAP 2013) (citing *Canning v. Beneficial Me., Inc. (In re Canning)*, 462 B.R. 258, 263 (1st Cir. BAP 2011), *aff'd* 706 F.3d 64 (1st Cir.2013)). An order granting a motion for judgment on the pleadings pursuant to Rule 12(c) is a final order. *See Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno)*, 320 B.R. 473, 477 (1st Cir. BAP 2005) (citation omitted). Therefore, the Panel has jurisdiction to hear this appeal.

## STANDARD OF REVIEW

■■■■ The Panel reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). A bankruptcy court's entry of a judgment on the pleadings under Rule 12(c) is reviewed de novo. *See Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir.2007) (citing *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 55 (1st Cir.2006)).

## DISCUSSION

### I. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is governed by Rule 12(c), which is made applicable in adversary proceedings pursuant to Bankruptcy Rule 7012. Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A Rule 12(c) motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss. *Curran v. Cousins*, 509 F.3d at 43. Like a motion under Rule 12(b)(6), a court will grant a defendant's Rule 12(c) motion if the pleadings show no set of facts which could entitle the plaintiff to relief. *Id.; see also Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir.2008) ("[We] will affirm a . . . judgment on the pleadings if the complaint fails to state facts sufficient to establish a claim for relief that is plausible on its face.").

While a Rule 12(b)(6) motion is "laser-focused on the legal adequacy of the complaint," a motion for judgment on the pleadings under Rule 12(c) examines "the undisputed factual record expanded by the defendant's answer to determine the merits of the claims as revealed in the formal pleadings." *Pimental v. Wells Fargo Bank, N.A.*, C.A. No. 14–494S, 2015 WL

5243325, *4 (D.R.I. Sept. 4, 2015) (citations omitted). " 'In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts.' " *Pollard v. Law Office of Mandy L. Spaulding,* 967 F.Supp.2d 470, 474 (D.Mass.2013), *aff'd,* 766 F.3d 98 (1st Cir.2014) (quoting *Gulf Coast Bank & Trust Co. v. Reder,* 355 F.3d 35, 38 (1st Cir.2004)). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in his favor. *R.G. Fin. Corp. v. Vergara–Nuñez,* 446 F.3d 178, 182 (1st Cir.2006) (citations omitted). "There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." *Id.* (citation omitted). Where a Rule 12(c) motion is based on an affirmative defense, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.,* 544 F.3d at 324 (citation and internal quotations omitted).

When considering a motion for judgment on the pleadings, the court generally may not consider matters outside of the pleadings without converting the motion to one for summary judgment. Fed.R.Civ.P. 12(d). There are, however, well-recognized exceptions to this principle. The court may consider " 'documents the authenticity of which are not disputed by the parties, ... documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.' " *Curran v. Cousins,* 509 F.3d at 44 (citation omitted).

Thus, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *R.G. Fin. Corp. v. Vergara–Nuñez,* 446 F.3d at 182 (citation omitted).

■ Consequently, when considering Nationstar's motion for judgment on the pleadings, the bankruptcy court was entitled to look at the pleadings, any exhibits attached to the pleadings, and any documents sufficiently referenced in the pleadings. The bankruptcy court was also entitled to take judicial notice of any entries on the dockets of the main bankruptcy case and the two adversary proceedings and the claims register, not for the truth of the matters contained within those documents but to establish their existence.

## II. The Discharge Injunction

■ Section 524 governs a debtor's bankruptcy discharge. Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2). The discharge injunction "embodies the fresh start policy of the Bankruptcy Code, by which honest but unfortunate debtors are relieved of personal liability for their discharged debts." *Lemieux v. America's Servicing Co. (In re Lemieux),* 520 B.R. 361, 364 (Bankr. D.Mass.2014) (citing *Canning v. Beneficial Me., Inc. (In re Canning),* 706 F.3d 64, 69 (1st Cir.2013)). "[T]he scope of the injunction is broad, and bankruptcy courts may enforce it through [ ] § 105...." *In re Canning,* 706 F.3d at 69. "[A]ny sanctions imposed for violations [are in] the nature of civil contempt." *Id.*

"Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir.2000) (citations omitted). "The discharge injunction is like a permanent extension of the automatic stay under [ ] § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as [ ] letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." *Delgado Laboy v. FirstBank P.R. (In re Delgado Laboy)*, A.P. No. 09–00047, 2010 WL 427780 at *5–6 (Bankr.D.P.R.2010) (citations omitted). The discharge injunction, however, does not prohibit every communication between a creditor and debtor—"only those designed 'to collect, recover or offset any such debt as a personal liability of the debtor.'" *In re Gill*, 529 B.R. 31, 37 (Bankr.W.D.N.Y.2015) (citations omitted).

"A creditor violates the discharge injunction ... when it (1) has notice of the debtor's discharge ...; (2) intends the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (1st Cir. BAP 2009) (citations omitted). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." *Bates v. CitiMortgage, Inc. (In re Bates)*, 517 B.R. 395, 398 (Bankr.D.N.H. 2014) (citing *Pratt v. Gen. Motors Acceptance Co. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir.2006)). "The burden of proof is on the former debtor to establish by clear and convincing evidence that [the] creditor violated the post-discharge injunction." *Manning v. CitiMortgage, Inc. (In re*

*Manning)*, 505 B.R. 383, 386 (Bankr. D.N.H.2014) (citations omitted).

Despite its broad scope, the discharge injunction does not prohibit a secured creditor from enforcing a valid prepetition mortgage lien. *In re Canning*, 706 F.3d at 69. "Fundamentally, a discharge merely releases a debtor from personal liability on the discharged debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as foreclosure rights, survive or pass through the bankruptcy." *In re Reuss*, No. DT–07–05279, 2011 WL 1522333, at *2 (Bankr. W.D.Mich. April 12, 2011). Thus, "after the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue in personam relief against the debtor." *Id.*

In addition, § 524(j) provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor, and limited to seeking payments in lieu of in rem relief. This section provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). Section 524(j) is formulated in the conjunctive, and, therefore, all three requirements must be met for the exception to apply. *In re Lemieux,* 520 B.R. at 368. If any of the requirements are not met, the creditor remains subject to § 524(a)(2)'s discharge injunction. *Id.*

### III. Analysis

 The fundamental question here is whether the pleadings set forth facts sufficient to establish a plausible claim that Nationstar violated the § 542(a)(2) discharge injunction, and if so, whether the pleadings set forth facts sufficient to establish that the § 524(j)(2) exception applied.

In his complaint, the Debtor identified six communications which he claimed violated the discharge injunction. The facts surrounding the sending of the correspondence in question, their receipt by the Debtor, and their content are not in dispute.[5] Three of the communications were letters informing the Debtor of a "Dedicated Loan Specialist" who could assist him and answer questions regarding his loan status. A fourth letter informed the Debtor that Nationstar had placed certain "unapplied funds" into a "suspense account" because the funds were insufficient to be applied as a full payment, and that the total amount required to bring the account current was $149,365.38. All four of these letters included disclaimers at the bottom stating that Nationstar was a debt collector, but if the Debtor was currently in bankruptcy or had received a discharge in bankruptcy, the communication was not an attempt to collect a debt from the Debtor personally but was provided for informational purposes only.

The fifth letter, which indicated it was being sent as required by the terms of the mortgage, advised the Debtor of his default under the loan documents, the total amount due to cure the default, the due date for the next regular payment, and that failure to cure the default could result in acceleration of the loan and foreclosure proceedings. The first paragraph of the letter was a disclaimer stating that Nationstar was a debt collector, but if the Debtor was currently in bankruptcy or had received a discharge in bankruptcy, the communication was not an attempt to collect a debt from the Debtor personally but was provided for informational purposes only. The sixth letter was a mortgage statement containing account information such as the loan number, payment due date, and total amount due. It explained that the amount payable consisted of overdue payments and fees, and it also provided the loan balance and interest rate. The letter included a disclaimer at the bottom stating that the statement was sent for information purposes only and was not intended as an attempt to collect, assess, or recover a discharged debt from the Debtor.

 "[C]ontact with the Debtor is not per se prohibited by the discharge injunction. Rather, demands for payment of discharged debts are prohibited." *In re Brown,* 481 B.R. 351, 358 n. 10 (Bankr. W.D.Pa.2012). Moreover,

> "When a secured creditor retains a lien on the debtor's property after the discharge, courts have held that it is not *per se* improper for the secured creditor to contact a debtor to send payment

---

**5.** Although the Debtor did not attach any of the communications to his complaint, he referenced them in the complaint, they were essential to his claim, and their authenticity was not disputed. Therefore, the bankruptcy court could consider them when making its determination. *See Curran v. Cousins,* 509 F.3d at 44; *R.G. Fin. Corp. v. Vergara–Nuñez,* 446 F.3d at 182.

coupons, determine whether payments will be made on the secured debt, or inform the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability."

*In re Culpepper,* 481 B.R. 650, 658 (Bankr. D.Or.2012) (citing 4 *Collier on Bankruptcy* ¶ 524.02[2][b] ).

Other than the fact that Nationstar sent the post-discharge correspondence to the Debtor, there is nothing in the pleadings that demonstrated that Nationstar was attempting to collect the discharged debt from the Debtor personally, or that it was demanding or coercing the Debtor to make payment on the account. In fact, all of the correspondence in question contained language stating that if the Debtor was currently in bankruptcy or had received a discharge in bankruptcy, the communication was not an attempt to collect a debt from the Debtor personally but was provided for informational purposes only. Statements of an informational nature, even if they include a payoff amount, are not generally actionable if they do not demand payment. *See In re Brown,* 481 B.R. at 359 (general informational letters that included a payoff amount but did not demand payment were not violations of the discharge injunction) (citing cases).

Although the existence of disclaimer language will not serve to insulate an otherwise improper demand for payment, these statements made it clear that, because the Debtor had received a bankruptcy discharge, the correspondence was not an attempt to collect the debt from him personally and was provided for informational purposes only in the event he wanted to cure the default in order to prevent foreclosure. In such circumstances, bankruptcy courts have found that the discharge injunction is not violated. *See, e.g., In re*

*Bates,* 517 B.R. at 399–402; *Jones v. BAC Home Loans Servicing, L.P. (In re Jones),* A.P. No. 09–50281, 2009 WL 5842122 (Bankr.S.D.Ind. Nov. 25, 2009); *see also Pennington–Thurman v. Bank of Am. N.A. (In re Pennington–Thurman),* 499 B.R. 329 (8th Cir. BAP 2013). As one bankruptcy court stated, "[e]ven a hypothetical unsophisticated consumer should understand after reading these disclaimers that the [letters were] not demands for payment." *In re Lemieux,* 520 B.R. at 366 (citing *In re Nordlund,* 494 B.R. 507, 517 (Bankr.E.D.Cal.2011) ("[E]ven though the statements contain outstanding payment amounts, payment due dates, payment instructions, and include a payment coupon, the language in each statement indicates that they are not an attempt to collect a discharged debt.")).

All of the post-discharge correspondence from Nationstar was limited to either seeking payment on the note so that it would not be forced to foreclose, or for informational purposes only. They did not demand any payment and were not designed to collect or recover any debt from the Debtor. *See In re Gill,* 529 B.R. at 37 (Bankr.W.D.N.Y.2015). Thus, they do not establish a plausible claim that Nationstar violated the discharge injunction.

█ Moreover, even if one or more of the letters constituted an act to collect a debt, the facts presented in the pleadings established Nationstar's § 524(j) defense. First, it is important to note that the Debtor never raised any factual dispute regarding the second and third elements of § 524(j)—that the letters from Nationstar were sent in the ordinary course of business and were limited to seeking periodic payments in lieu of pursuit of in rem relief—in either his opposition to the motion for judgment on the pleadings or in this

appeal.[6] *See* 11 U.S.C. § 524(j)(2) & (3). The only issue the Debtor has raised regarding § 524(j) relates to Nationstar's secured status. Thus, the other two issues are waived. *In re Canning*, 706 F.3d at 70 n. 8 (explaining failure to brief an issue constitutes waiver).

The question then becomes whether there was a real factual dispute about whether Nationstar had a security interest in real property that is the principal residence of the Debtor. *See* 11 U.S.C. § 524(j)(1). The Debtor does not dispute that the real property in question is his principal residence. Rather, he argues that Nationstar did not have a valid mortgage as it never filed a proof of claim or objected to his plan, and the mortgage was then discharged as an unsecured debt. He also challenges the validity of the assignment of the mortgage to Nationstar.

Despite the Debtor's repeated assertions to the contrary, Nationstar did file objections to both of the plans proposed by the Debtor. In any event, the plans were not confirmed and, therefore, are not binding in any way. In addition, contrary to the Debtor's assertions, Nationstar did file a proof of claim to which it attached copies of a mortgage, promissory note, allonge, and assignment of mortgage. The Debtor never filed an objection to the proof of claim. Absent an objection, Nationstar's secured claim is presumed valid. *See* Fed. R. Bankr.P. 3001(f) ("A proof of claim exe-cuted and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). While the Debtor had filed an adversary proceeding contesting the validity of Nationstar's mortgage, the bankruptcy court dismissed that adversary proceeding due to the Debtor's failure to prosecute. A dismissal of a proceeding for failure to prosecute operates as an adjudication on the merits. *See* Fed.R.Civ.P. 41(b).[7] Thus, despite the Debtor's protestations to the contrary, the pleadings, as supplemented by the facts susceptible to judicial notice, do not reveal a potential dispute about this material fact; rather, they establish that Nationstar was a secured creditor with a lien on the Property.

In light of the above, we conclude that the bankruptcy court did not err in granting Nationstar's motion for judgment on the pleadings.

## *CONCLUSION*

For the reasons set forth above, we **AFFIRM.**

---

**6.** In its answer to the complaint, Nationstar pled as an affirmative defense that it "acted in the ordinary course of business" and that its "actions are expressly permitted under the Bankruptcy Code," although it did not reference § 524(j) specifically.

**7.** Rule 41(b), made applicable to adversary proceedings pursuant to Bankruptcy Rule 7041, provides as follows:

If the plaintiff fails to prosecute [an action] or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) ... operates as an adjudication on the merits.

Fed.R.Civ.P. 41(b). Although not specifically set forth in the rule, a court may dismiss a case sua sponte for any of the reasons set forth in Rule 41(b). *See Acosta v. Reparto Saman Inc. (In re Acosta)*, 497 B.R. 25, 33 (Bankr.D.P.R.2013) (citing *Cintron–Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 526 (1st Cir.2002)).